UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY SMITH d/b/a Art Attack
Studios,

      Plaintiff,

v.                          Case No. 8:09-cv-1013-T-33EAJ

TRANS-SIBERIAN ORCHESTRA, PAUL
O'NEILL, and GREG HILDEBRANDT,

      Defendants.
_____/

**ORDER**

This matter is before the Court pursuant to Defendant Greg Hildebrandt's motion to dismiss for lack of personal jurisdiction (Doc. # 12), filed on July 13, 2009.  On July 22, 2009, Plaintiff Gary Smith filed his response in opposition to the motion to dismiss. (Doc, # 15).  Thereafter, on August 3, 2009, with leave of Court, Hildebrandt filed his reply memorandum in support of the motion to dismiss. (Doc. # 18).  Upon due consideration, the Court grants the motion to dismiss.

**I.**    <u>**The Complaint**</u>

Smith, a Florida-based artist, asserts that he entered into an agreement with Paul O'Neill (the owner of the Trans-Siberian Orchestra "TSO") to create artwork known as "Rose Guitar" for a single TSO album cover.  (Doc. # 1 at ¶ 12).

1

Smith did not relinquish the rights to further use of "Rose Guitar," nor did Smith enter into any agreements allowing others to use the image of "Rose Guitar" without his permission. (<u>Id.</u> at ¶ 14).

Smith registered "Rose Guitar" with the United States Copyright Office. (<u>Id.</u> at ¶ 15).  Smith alleges that TSO is using "Rose Guitar" on concert merchandise including, but not limited to, t-shirts, key-chains, hats, clothing, and song books. (<u>Id.</u> at ¶ 19-20).  Smith also alleges that "Rose Guitar has been used in other works on TSO's website and is made available for use as a downloadable electronic icon and computerized wallpaper." (<u>Id.</u> at ¶ 21).

As to Defendant Hildebrandt, a New Jersey artist, Smith alleges: "'Rose Guitar' has also been used by Hildebrandt in additional artwork, further infringing upon Smith's copyright and exclusive ownership of the artwork." (<u>Id.</u> at ¶ 25).  Smith further alleges that Hildebrandt has "directly and indirectly profited and benefitted from the use and sale of Rose Guitar" and that Hildebrandt is "responsible for the design, manufacture, sale, marketing and distribution of the Infringing Products." (<u>Id.</u> at ¶¶ 26, 32).

Thus, on June 1, 2009, Smith filed a complaint against TSO, O'Neill, and Hildebrandt. (Doc. # 1).  The complaint

contains seven counts, each asserted against all Defendants as follows: (1) Copyright Infringement; (2) Contributory Copyright Infringement; (3) Vicarious Copyright Infringement; (4) Deceptive and Unfair Trade Practices; (5) Common Law Unfair Competition; (6) Violation of the Visual Artists Rights Act of 1990 ("VARA"), and (7) Unjust Enrichment. (Doc. # 1).

Defendants TSO and O'Neill filed an answer to the complaint on July 13, 2009. (Doc. # 11).  Hildebrandt did not file an answer to the complaint.  Instead he filed the instant motion to dismiss and contends that this Court lacks personal jurisdiction over him.  Hildebrandt seeks to be dismissed from this case with prejudice.

## II. **Legal standard**

A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction. <u>Posner v. Essex Ins. Co.</u>, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999). On a motion to dismiss for lack of personal jurisdiction, such as the present one, the plaintiff bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant.

The determination of whether the court has personal jurisdiction over a defendant is governed by a two-part analysis.  First, the court must determine whether the

3

plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)(citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)).

Second, once it has determined that the long-arm statute is satisfied, the court must determine whether plaintiff's assertion of jurisdiction comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice. Sculptchair, Inc., 94 F.3d at 626 (quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).  In this case, the Court determines that Florida's long-arm statute has not been satisfied, and therefore, analysis of Due Process and traditional notions of fair play and substantial justice is not required.

A.  **Florida's Long-Arm Statute**

Smith alleges in the complaint that this Court has both general and specific jurisdiction over Hildebrandt, specifically, Florida Statute Sections 48.193(1)(a)(engaging in a business venture in Florida); 48.193(1)(b)(committing a tortious act in Florida); and 48.193(2) (engaging in substantial and not isolated activity in Florida). (Doc. # 1 at ¶ 4).  Hildebrandt, on the other hand, contends that this

4

Court lacks personal jurisdiction over him, and he supported

his contentions with a declaration challenging personal

jurisdiction. Accordingly, a specific burden-shifting scheme

applies in this case. As stated in Walt Disney Co. v. Nelson,

677 So. 2d 400 (Fla. 5th DCA 1996):

> The burden of demonstrating the applicability of §
> 48.193 may initially be met by pleading facts
> within a jurisdictional basis contained in the
> statute. If the plaintiff has pled a prima facie
> case for jurisdiction, a simple motion to dismiss
> for lack of jurisdiction must fail, as a motion to
> dismiss, without more, challenges only the facial
> sufficiency of the jurisdictional pleading. If,
> however, the defendant supplements the motion with
> an affidavit contesting jurisdiction, then the
> burden returns to the plaintiff who must, by
> affidavit or other sworn statement, prove a
> sufficient jurisdictional basis.

Id. at 402; see also Future Tech. Today, Inc., 218 F.3d at

1249 (quoting Prentice v. Prentice Colour, Inc., 779 F. Supp.

578, 583 (M.D. Fla. 1991).[1]

In the complaint, Smith established a prima facie case

for personal jurisdiction over Hildebrandt. Here, through a

---

[1]Prentice held that, after a plaintiff alleges sufficient
facts supporting the exercise of personal jurisdiction under
a long-arm statute, "the burden shifts to the defendant to
make a prima facie showing of the inapplicability of the
statute. If the defendant sustains this burden, the plaintiff
is required to substantiate the jurisdictional allegations in
the complaint by affidavits or other competent proof, and not
merely reiterate the factual allegations in the complaint."
779 F. Supp. at 583.

declaration, Hildebrandt rebutted Smith's jurisdictional allegations.  In addition, Hildebrandt filed his responses to Smith's interrogatories.

**B.   Hildebrandt's   Declaration   and   Interrogatory Responses**

Hildebradt states in his declaration that he is an artist and illustrator who has created posters for <u>Barbarella</u>, <u>Clash of the Titans</u>, and <u>Star Wars</u>.  (Hildebrand Decl. Doc. # 13-1 at ¶ 2).  He has also worked on illustrations for calendars, books, and other media. (<u>Id.</u>)  He has "created various artwork for rock bands including the many works for the band Trans-Siberian Orchestra." (<u>Id.</u>)  He states that "in my entire time working with TSO, I have only created three works featuring guitars and roses, and that last one was created in 2005." (<u>Id.</u> at ¶ 3).

Hildebrand is a New Jersey resident, and he argues that he has no personal contacts with Florida.  He says that in his entire life, he has traveled to Florida only twice, and both trips were unrelated to the guitar and rose art in question. He indicates that he owns no property in Florida, has no bank accounts in Florida, has never been licenced to do business in Florida, has never solicited business via television or radio in Florida, has never had any employees or agents in Florida,

has never had a parent/joint venture or other relationship with an enterprise in Florida, and has never stored inventory or supplies in Florida. (Id. at ¶ 4).

Hildebrandt states that the art in question featuring guitars and roses was created in New Jersey and that he is "not involved in the design, manufacture, distribution, or sale of TSO's merchandise featuring my art." (Id. at ¶ 6). He explains, "I do not personally sell my art directly to consumers. Rather, I own a New Jersey domestic profit corporation called Spiderwebart Gallery, Inc. that sells and licenses my artwork and other artists' pieces." (Id. at ¶ 7).

Hildebrandt indicates that he has sold art from his website to Florida residents on 16 occasions since 1997. (Id.) Importantly, he notes: "of the approximately 5,000 pieces of art, books and collectibles for sale on the website, not a single sale to a Florida resident ever involved the works at issue in this lawsuit. Thus, any contact I do have with Florida is random, fortuitous, or attenuated." (Id.)

On August 7, 2009, after Hildebrandt filed his affidavit, Smith moved for additional discovery on the issue of personal jurisdiction and also moved for oral argument on the motion to dismiss. (Doc. # 20). The Court granted the motion as to discovery but deferred ruling on the issue of oral argument.

(Doc. # 23).   The parties engaged in discovery regarding personal jurisdiction over Hildebrandt, and on September 25, 2009, Hildebrandt filed his responses to Smith's interrogatories. (Doc. # 26).   Notably, Smith asked Hildebrandt to "identify any facts known to You that serve to rebut the allegation that You have sufficient contacts with Florida . . ." (Doc. # 26 at 6).   Hildebrandt responded:

> I am a seventy year old commercial illustrator.   I am not a publisher, nor do I manufacture or distribute merchandise featuring my artwork.   I began my career fifty years ago.   Since the beginning of my career, I have created thousands upon thousands of pieces of art in every possible genre.   This art mostly was created on a work made for hire basis.   Work made for hire artists receive a one time payment and very rarely, but on occasion, a royalty.   Once I submit my artwork to the commissioning party, a book publisher for example, I have no way of knowing how or where that publisher sells the books.   To the extent I get royalty statements, they do not indicate where the books (or other licenced merchandise) are sold. And I have no control over where the commissioning party sells the merchandise.

(Doc. # 26 at 7).

In response to Smith's interrogatories directed to Hildebrandt's creation of art for TSO, Hildebrandt responded: "Although I am aware that the Trans-Siberian Orchestra typically performs at concerts in the State of Florida in the late fall each year, I have no personal knowledge of whether or when any merchandise featuring my rose guitar artwork was

displayed in the State of Florida." (Doc. # 26 at 10).

   C.   **Analysis**

   On a motion to dismiss for lack of jurisdiction, a defendant must state sworn facts, which, "if taken as true, show that the defendant's conduct does not make him or her amenable to service." Acquadro v. Bergeron, 851 So.2d 665, 672 (Fla. 2003).   Hildebrandt's declaration and sworn interrogatory answers meet this test and shifted the burden back to Smith to "substantiate the jurisdictional allegations in the complaint by affidavits, or other competent proof." Polskie Linie Oceaniczne v. Seasafe Transport A/S, 795 F.2d 968, 972 (11th Cir. 1986).

   Smith did not meet his burden.  He did not come forward with any evidence to substantiate the jurisdictional allegations as to Hildebrandt.   Smith argued that Hildebrandt's "artwork is intertwined in the final TSO product, and therefore, he knowingly was, and remains, directly responsible for part of the design of these products depicting the 'Rose Guitar' image which he incorporated into his art, regardless of his involvement [or lack of involvement] at the end manufacturing and distribution stages." (Doc. # 15 at 3-4).

   In support of this jurisdictional argument, Smith cites

manufacturer liability cases such as <u>Ford Motor Co. v. Atwood Vacuum Machine Co.</u>, 392 So.2d 1305 (Fla. 1981).  There, an individual sustained injuries due to the faulty operation of the rear door hinge of a Ford station wagon. <u>Id.</u> at 1307.  She sued Ford and her local Ford dealer. <u>Id.</u> at 1306.  Ford filed a third-party complaint against Atwood, the company that manufactured the defective door hinge.  <u>Id.</u> at 1307.  The trial court dismissed Atwood, an Illinois company, after determining that it lacked personal jurisdiction over Atwood because Atwood did not have minimum contacts with Florida. <u>Id.</u>

The Florida Supreme Court reversed the trial court's dismissal of Atwood from the suit and held: "the fact that a nonresident manufactures a component part outside the state and takes no part in the sale, distribution, or marketing of the finished product in the state is no basis for a limitation on jurisdiction . . . .  Atwood Vacuum Company's lack of direct presence and activity within the borders of Florida is no bar to our holding that the minimum contacts test of <u>International Shoe</u> is met." <u>Atwood</u>, 392 So.2d at 1313 (citing <u>International Shoe v. Washington</u>, 326 U.S. 310 (1945)).

This Court declines to apply the <u>Atwood</u> case to the present case because Hildebrandt is not a manufacturer of component parts to be incorporated into widely used products,

such as Ford motor vehicles.   In addition, the holding in
<u>Atwood</u> was reached prior to the Supreme Court's dispositive
decisions regarding personal jurisdiction of non-resident
defendants in <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462
(1985) and <u>Asahi Metal Industry Co. v. Superior Court</u>, 480
U.S. 102 (1987).

In this case, Smith failed to prove to the Court that it
has personal jurisdiction over Hildebrandt.   Indeed, in
Smith's response to the motion to dismiss, Smith appears to
have abandoned his specific jurisdiction theories.   Smith
focuses his arguments on general jurisdiction over
Hildebrandt.   However, Hildebrandt's declaration establishes
that his activities in Florida are nearly nonexistent, a far
cry from "substantial and not isolated."   Thus, under the
Eleventh Circuit's burden-shifting scheme, Smith has failed to
carry his burden.[2]

Because Hildebrandt filed a declaration controverting
Smith's jurisdictional allegations and Smith has failed to

---

[2] In addition, this Court declines to hold an evidentiary
hearing or oral argument, as requested by Smith because only
Hildebrandt tendered a declaration.   <u>See</u> <u>Venetian Salami Co.</u>
<u>v. Parthenais</u>, 554 So. 2d 499 (Fla. 1989).   <u>Venetian Salami</u>
held that a limited evidentiary hearing is necessary only if
affidavits filed by plaintiff and defendant cannot be
harmonized.   <u>Id.</u> at 503.   There is no need for an evidentiary
hearing when, as is the case here, only the Defendant filed a
declaration.

carry its burden of proving that Hildebrandt had substantial and not isolated contacts in Florida (or that Hildebrandt had a business or committed a tortious act in the state of Florida), Hildebrandt's motion to dismiss for lack of personal jurisdiction will be granted. Because Smith was unable to prove that the requirements of the long-arm statute were met, the Court declines to engage in a Due Process analysis.

### III.  CONCLUSION

Smith has failed to prove facts sufficient to support its claim that Florida's long-arm statute applies to Hildebrandt's actions in this case. Because the exercise of personal jurisdiction is proper in this case only if the long-arm statute applies, Hildebrandt's motion to dismiss is granted.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Greg Hildebrandt's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 12) is **GRANTED**.

(2)  Greg Hildebrandt is dismissed from this case with prejudice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>10th</u> day of February, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record