UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY SMITH d/b/a ART
ATTACK STUDIOS,

           Plaintiff,

                     Case No.: 8:09-cv-1013-T-33EAJ

vs.

TRANS-SIBERIAN ORCHESTRA,
ET AL.,

           Defendants.
_____/

**ORDER**

    This matter is before the Court pursuant to Plaintiff Gary
Smith's Motion to Amend the Complaint to Join Defendant (the
"Motion to Join" Doc. # 34), which was filed on April 1, 2010.
Defendants filed a response opposing the Motion to Join on April
26, 2010. (Doc. # 37). Also before the Court is Defendants'
Cross-Motion for Sanctions (the "Sanctions Motion" Doc. #39),
filed on April 26, 2010, to which Smith filed a response on May
10, 2010. (Doc. # 41).

    The amended complaint Smith seeks to file joins as a
Defendant Spiderweb Art Gallery, Inc. The original complaint
alleges that Greg Hildebrandt, the owner of Spiderwebart, and
Trans-Siberian Orchestra ("TSO") infringed upon Smith's
copyright of the Rose Guitar image. This Court dismissed
Hildebrandt from the case with prejudice for lack of personal
jurisdiction. (Doc. # 32).

1

Smith now wishes to amend the complaint to add Spiderwebart. He alleges that Spiderwebart initially created the infringing Rose Guitar image and distributed it to TSO under contract. Defendants respond that Smith's amended complaint is futile: If leave to amend were granted, they assert, the complaint would be subject to dismissal because this Court lacks jurisdiction over Spiderwebart. (Doc. # 37).

In addition, Defendants ask that sanctions be awarded against Smith for costs incurred in the course of responding to Smith's Motion to Join Spiderwebart. (Doc. # 39). By previously dismissing Smith's claim against Hildebrant for lack of personal jurisdiction, they argue, the Court has *ipso facto* already concluded that it lacks personal jurisdiction over Spiderwebart. (Doc. # 39 at ¶ 2). Thus, Smith's Motion to Join, the argument goes, can be understood only as an "unreasonable and vexatious attempt to compel Defendants . . . to incur additional costs . . . in responding to th[e] motion," for which sanctions are warranted under 28 U.S.C. § 1927.(Doc. # 39 at ¶ 4).

For the reasons that follow, the Court will grant Smith's Motion to Join Spiderwebart and will deny Defendants' Sanctions Motion.

## I. <u>RULE 15 ANALYSIS</u>

Under Rule 15(a), a party may amend his own pleading only by leave of court or by written consent of the adverse party

after a responsive pleading has been served. Fed. R. Civ. P. 15(a). "The decision whether to grant leave to amend a complaint is within the sole discretion of the district court." Laurie v. Ala. Court of Crim. App., 256 F.3d 1266, 1274 (11th Cir. 2001).

However, pursuant to Fed. R. Civ. P. 15(a), timely motions for leave to amend are held to a very liberal standard, and leave to amend should be freely given when justice so requires. Senger Bros. Nursery, Inc. v. E.I. Dupont De Nemours & Co., 184 F.R.D. 674, 678 (M.D. Fla. 1999). Thus, Rule 15(a) limits the Court's discretion by requiring it to "freely give leave when justice so requires." Foman v. Davis, 371 U.S. 178 (1962). As a result, the Court must provide substantial justification if it denies a timely filed motion for leave to amend. Laurie, 256 F.3d at 1274. "Substantial reasons justifying a denial include 'undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of allowance of the amendment.'" Id.

Here, Smith's request to amend the complaint is timely: It falls within the deadline set forth in the Case Management and Scheduling Order.[1]   Thus, amendment of the complaint is proper

---

[1] While timely motions for leave to amend are held to a very liberal standard, motions filed after the leave to amend deadline are held to the "good cause" standard under Rule 16(b) and should be denied unless the schedule mandated in the

under Rule 15 of the Federal Rules of Civil Procedure.  However, since Smith also seeks to join a defendant, the Court will also evaluate Rule 20 of the Federal Rules of Civil Procedure.

## II. <u>RULE 20 ANALYSIS</u>

The purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits. <u>Alexander v. Fulton</u>, 207 F.3d 1303, 1323 (11th Cir. 2000) (citing <u>Mosley v. Gen. Motors Corp.</u>, 497 F.2d 1330, 1332 (8th Cir. 1974)), <u>overruled on other grounds</u>, 338 F.3d 1304, 1328 (11th Cir. 2003). To this end, courts should seek the broadest possible scope of an action consistent with fairness to the parties. <u>Id.</u> (citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 724 (1996)).

Rule 20(a) imposes two requirements for joinder of parties. First, all claims against parties joined as defendants must regard or arise out of "the same transaction or occurrence, or series of transactions or occurrences." <u>Alexander</u>, 207 F.3d at 1303. Second, there must be some question of law or fact common to all defendants that will arise in the action. <u>Id.</u>

Courts have developed a variety of tests to give meaning to the first requirement of Rule 20 that all claims regard or arise from the same transaction or occurrence. Precedent construing

---

scheduling order cannot "be met despite the diligence" of the moving party. <u>Sosa v. Airprint Sys., Inc.</u>, 133 F.3d 1417, 1419 (11th Cir. 1998).

Rule 13(a) may be looked to for guidance here.[2] <u>Alexander</u>, 207 F.3d at 1323. In the Eleventh Circuit, courts apply the logical relationship test. <u>Republic Health Corp. v. Lifemark Hosp. of Fla.</u>, 755 F.2d 1453, 1455 (11th Cir. 1985). Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim. <u>Id.</u> at 1455 (citing <u>Plant v. Blazer Fin. Serv.</u>, 598 F.2d 1357, 1361 (5th Cir. 1979)).

Defendants have not contested that the claims against Spiderwebart are related to the infringement claims against the other Defendants, and the Court finds that there is a logical relationship between those claims. They all concern or arise from the same act, namely, the allegedly unauthorized use of Smith's protected Rose Guitar image. Further, they all concern or arise from a common issue of law: Copyright infringement. Accordingly, the Court finds that Smith's Motion to Join satisfies Rule 20 of the Federal Rules of Civil Procedure.

## III. <u>PERSONAL JURISDICTION</u>

Even though the Court has determined that the putative complaint counts pass the logical relationship test, Defendants urge the Court to deny the Motion to Join based on the argument

---

[2] Rule 13(a) sets forth the standard for Compulsory Counterclaims. Fed. R. Civ. P. 13(a).

that amendment would be futile because this Court lacks personal jurisdiction over Spiderwebart.

Where a complaint as amended would be subject to dismissal for lack of jurisdiction, the complaint is futile and leave to amend should be denied. Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004). The sole focus of the futility defense here is personal jurisdiction.[3] Smith's Motion to Join survives the futility defense, because this Court preliminarily finds that it has personal jurisdiction over Spiderwebart.

The determination of whether the court has personal jurisdiction over a defendant is governed by a two-part analysis. First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's long-arm statute. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (citing Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996)).

Second, once it has determined that the long-arm statute is satisfied, the court must determine whether plaintiff's assertion of jurisdiction comports with the Constitution's requirements of due process and traditional notions of fair play

---

[3] Subject matter jurisdiction is not at issue because copyright infringement suits fall under federal question jurisdiction. See, e.g., Palmer v. Braun, 376 F.3d 1254, 1258 (11th Cir. 2004).

and substantial justice. Sculptchair, Inc., 94 F.3d at 626
(quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

### A. FLORIDA'S LONG-ARM STATUTE

#### 1. LEGAL STANDARD

Federal courts are bound by Florida Supreme Court precedent
in construing Florida's long-arm statute: The scope of the long-
arm statute is an issue of state law. Sculptchair, Inc., 94 F.3d
at 627 (citing Cable/Home Commc'ns v. Network Prod's, 902 F.2d
829, 855 (11th Cir. 1990)). Further, unless otherwise indicated
by the Florida Supreme Court, Federal courts must treat
decisions rendered by Florida's intermediate courts with the
same deference. Id. (citing Polski Linie Oceaniczne v. Seasafe
Transp. A/S, 795 F.2d 968, 970 (11th Cir. 1986)).

Florida's long-arm statute provides for specific personal
jurisdiction over defendants who commit one of a series of acts.
FLA. STAT. § 48.193(1). Where a defendant is found to have
undertaken one of the acts enumerated in Florida Statute Section
48.193(1), and the cause of action arises from or relates to
that act, the long-arm statute has been met. Nida v. Nida, 118
F. Supp. 2d 1223, 1231 (M.D. Fla. 2000); see also Becker v.
Hooshmand, 841 So. 2d 561, 562 (Fla. 4th DCA 2003). This Court
limits its analysis of Spiderwebart's contacts with Florida to
the long-arm statute's tortious act provision because that
provision is both "applicable and sufficient." FLA. STAT. §

7

48.193(b); <u>Cable/Home Commc'ns v. Network Prod's</u>, 902 F.2d at

855. The provision reads:

> (1) Any person . . . who . . . does any of the acts
> enumerated in this subsection thereby submits himself . . .
> to the jurisdiction of the courts of this state for any
> cause of action arising from the doing of any of the
> following acts:
> . . . .
> (b) Committing a tortious act within this state . . .

FLA. STAT. § 48.193.

Copyright infringement is widely recognized as a tortious

act within the context of 48.193(b). <u>Bangor Punta Operations v.</u>

<u>Universal Marine Co.</u>, 543 F.2d 1107, 1109 (11th Cir. 1976); <u>see</u>

<u>also Cable/Home Commc'ns v. Network Prod's</u>, 902 F.2d at 854

(finding tortious act provision of Florida long-arm statute

applicable, where defendant allegedly violated copyright and

communications laws). Thus, the sole question at issue is

whether, for purposes of construing 48.193(1)(b), Spiderwebart's

alleged copyright infringement occurred "within this state."

The Florida Supreme Court has found that a defendant's

physical presence is not required to commit a tortious act

within the state; indeed, a nonresident defendant may commit a

tortious act within the state by electronic, written, or

telephonic communication into Florida so long as the cause of

action arises from such communication. <u>Whitney Info. Network,</u>

<u>Inc. v. Xcentric Ventures</u>, 347 F. Supp. 2d 1242, 1244-1245 (M.D.

Fla. 2004) (citing <u>Wendt v. Horowitz</u>, 822 So. 2d 1252, 1260 (Fla. 2002) and the connexity requirement of Fla. Stat. § 48.193).

Tortious acts committed through website postings, however, present a unique challenge: Unlike a phone call, chatroom conversation, or fax, images or words posted to a website are not electronic communications in the traditional sense. <u>Internet Solutions Corp. v. Marshall</u>, No. SC09-272, 2010 WL 2400390, at *8 (Fla. June 17, 2010). First, they are not generally directed at a particular person or even a particular state. <u>Id.</u> Second, even when directed at a particular person or state, the website is still accessible from virtually any forum. <u>Id.</u>

To make sense of whether and under what circumstances a website may constitute an electronic communication into Florida, a variety of tests have been developed. Some courts have held that website activity may constitute a tortious act within Florida, only if the website activity specifically targets Florida residents. <u>See</u> <u>Whitney Info. Network, Inc.</u>, 347 F. Supp. 2d at 1244-1245 (finding Arizona company's website targeted Florida, where it allowed consumers to post complaints about Florida companies and narrow searches for consumer reports to those regarding Florida companies; advertised and solicited advertisements from Florida businesses; and solicited donations from all consumers); <u>see also</u> <u>Renaissance Health Publ'g v. Resveratrol Partners</u>, 982 So. 2d 739, 740-741 (Fla. 4th DCA

2008) (finding foreign company's website targeted Florida, where it libeled food supplement sold by Florida corporation and sold competing food supplements and publications about food supplements to Florida residents); but cf. Alternate Energy Corp. v. Redstone, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (finding that selling to Florida residents subscriptions for web publication that libeled company did not indicate that such website targeted Florida, where only a small percentage of publication's subscribers were Florida residents).

Other courts, however, have adopted a much broader accessibility test. According to this broader test, a website constitutes an electronic communication into Florida if it is accessible, in contrast to actually being accessed, by Florida residents. See Licciardello v. Lovelady, 544 F.3d 1280, 1282-1284 (11th Cir. 2008) (finding that music manager's website infringing on singer's copyright, through use of said singer's name and picture without authorization, caused tortious injury in Florida because website was accessible by Florida residents); see also Kvar Energy Savings, Inc. v. Tri-State Energy Solutions, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at *11 (M.D. Fla. Jan. 15, 2009) (holding that specific jurisdiction under Section 48.193(1)(b) applies where website displays alleged trademark infringement and is accessible in Florida); see also Richards v. Sen, No. 07-14254-CIV, 2008 WL 4889623, at

*4 (S.D. Fla. Nov. 12, 2008) (holding that tortious injury occurred in Florida where, pursuant to defendants' patent application, which tortiously omitted inventor's name, patent with said omission was uploaded to a website accessible by Florida residents); but cf. HME Providers, Inc. v. Heinrich, No. 6:09-cv-2186-Orl-31GJK, 2010 WL 557106, at *3 (M.D. Fla. Feb. 11, 2010) (declining to extend accessibility test to website accessible in Florida, where website activity did not involve copyright infringement but rather misappropriation of trade secrets and conversion of intellectual property).

In addition to the specific targeting and accessibility tests, the Florida Supreme Court has recently adopted a new test, requiring that a website actually be accessed—rather than merely be accessible—by a Florida resident. Internet Solutions Corp., 2010 WL 2400390, at *13. Unless satisfied, the website communication cannot constitute a tortious activity in Florida under 48.193(1)(b).

## 2. ANALYSIS

This Court must, first, determine which test it will apply. The most recent access-based test formulated by the Florida Supreme Court is inapplicable here. Retroactive application of a superseding long-arm statute violates the requirements of fair notice. See Fiberboard Corp. v. Kerness, 625 So. 2d 457, 458 (Fla. 1993). Because Smith filed his Motion to Join Spiderwebart

11

before the Marshall ruling was published, applying Marshall would constitute a retroactive application. While the Marshall test represents only a superseding statutory interpretation, not a superseding statute, the effect of applying it retroactively would be the same: It would deprive Smith of the opportunity to know what the long-arm statute requires and to phrase the allegations in his complaint accordingly, thus violating the requirements of fair notice. See Landgraf v. USI Film Prods, 511 U.S. 244, 255 (1994).

Concerning the specific targeting and accessibility tests, precedent requires adoption of the latter. Generally, courts apply the targeting test only where a website has been used as a vehicle for libel. See, e.g., Renaissance Health Publ'g v. Resveratrol Partners, 982 So.2d at 740-41. The accessibility test is generally reserved for cases of online intellectual property infringement. See e.g., Licciardello, 544 F.3d at 1282-1284 (applying accessibility test, where defendant's offending website communication consisted of trademark infringement). These categories are fairly rigid. Indeed, this Court has not found a single online intellectual property infringement case adopting the targeting test. Given that intellectual property infringement is at issue in Smith's claim against Spiderwebart, the accessibility test is more appropriate.

12

Under the accessibility test, the Court finds Spiderwebart's supposed online sale of the Rose Guitar image to constitute a tortious act committed in Florida under 48.193(1)(b). This case bears similarity to Licciardello. In Licciardello, a personal manager for music artists posted a musician's trademarked name and picture on his website without permission. 544 F.3d at 1282. Reviewing a motion to dismiss the musician's trademark infringement claim, the Licciardello court found personal jurisdiction under 48.193(1)(b) valid because the music manager's website was accessible in Florida. Id. at 1283; see HME Providers, Inc. v. Heinrich, 2010 WL 557106, at *2-3.

Like Licciardello, Smith has brought an intellectual property infringement claim against Spiderwebart. (Doc. # 34-1 at ¶¶ 39-47). While unlike Licciardello, Smith's claim involves copyright rather than trademark infringement, the differences in the legal standards for each does not affect this Court's decision to apply the accessibility test.

Also, like Licciardello, Spiderwebart allegedly used its website as a vehicle to commit the infringement at issue. (Doc. # 34-1 at ¶ 35). It is true Spiderwebart allegedly did so by selling a protected image through its website, and the music manager in Licciardello by posting a protected photo and name. 544 F.3d at 1282; (Doc. # 34-1 at ¶ 35). Selling a protected image online, though, does not necessarily make it less

13

accessible than posting it. To be sure, Spiderwebart's website almost invariably allows users to view an image prior to purchasing it. <u>See generally</u> Spiderwebart Gallery, http://www.spiderwebart.com.

Even if users could not view the infringing image prior to purchasing it, however, the online sale of that image might still satisfy the accessibility requirement by making that image accessible to all Florida residents willing to pay for it. Although no Florida resident has expressed such willingness—evidenced by the fact that none have purchased the Rose Guitar image online—the most recent decision by the Florida Supreme Court in <u>Marshall</u> makes clear that actually accessing the infringing work is not a requirement under the accessibility test. <u>See</u> 2010 WL 2400390, at *12 (distinguishing between "posting" material online, which makes it accessible worldwide, and "publishing" material online, which requires someone from a particular forum actually to access it); (Doc. # 13-1 at ¶ 7).

As regards the connexity requirement, the Court preliminarily finds that this requirement has been met. First, both Smith's copyright infringement claim and the alleged conduct of Spiderwebart implicating the tortious act provision of 48.193(1) involve the same Rose Guitar image. Second, both concern the same act of posting that image online for sale. Indeed, at issue in both is the same alleged act of copyright

14

infringement. Thus, Smith's copyright claim unquestionably relates to and arises from Spiderwebart's contacts with Florida under 48.193(1)(b), because Spiderwebart's contacts are nothing more than the copyright infringement alleged in Smith's complaint.

At this early stage of the proceedings, the Court determines that the Plaintiff's amended complaint has alleged facts that satisfy the Florida Long-Arm statute. In order to fully address Defendants' futility argument, the Court will now discuss the Due Process requirements of minimum contacts and fair play and substantial justice.

**B. DUE PROCESS**

The second step of the jurisdictional analysis, whether there is a violation of Due Process, is a two-part inquiry. Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392 (11th Cir. 1988). The Court must decide, first, whether Spiderwebart has purposefully established minimum contacts with the State of Florida. Id. If the minimum contacts requirement is satisfied, the court must then assess whether the exercise of personal jurisdiction over Spiderwebart offends traditional notions of fair play and substantial justice. Id.

**1. MINIMUM CONTACTS**

With respect to minimum contacts, the first issue is whether such contacts are sufficient to confer general

jurisdiction, specific jurisdiction, or both. See Madara v. Hall, 916 F.2d 1510, 1516 (11th Cir. 1990). In this case, the Court will focus on specific jurisdiction.

Several tests are used by the Eleventh Circuit to determine whether sufficient minimum contacts exist in cases of specific jurisdiction. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1220 n.28 (11th Cir. 2009). In intentional torts cases, a so-called "effects" test is applied. Oldfield, 558 F.3d at 1220 n.28 (citing Calder v Jones, 465 U.S. 783, 788-89 (1984)). This test requires that a defendant have "(1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." Id.; see also Licciardello, 544 F.3d at 1286. Applying the test to intentional tort cases is justified by the fact that states have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents. See Licciardello, 544 F.3d at 1286 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 776-777 (1984)).

The effects test applies here because Smith's claim against Spiderwebart concerns an intentional tort. Intellectual property infringement constitutes an intentional tort if the infringement is undertaken with the purpose of making money. Licciardello, 544 F.3d at 1287-1288. Because Spiderwebart purportedly sold the

16

infringing Rose Guitar image through its website, its alleged copyright infringement was intentional. (Doc. # 34-1 at ¶ 35). Thus, the first requirement of the effects test, namely, the allegation of the commission of an intentional tort, is met here.

Smith's factual allegations also appear to satisfy the second requirement that the defendant's tortious act be expressly aimed at the forum state. A defendant's tortious act is aimed at the forum state, if it is directed at a resident of the forum. Licciardello, 544 F.3d at 1287 (quoting New Lenox Indus. v. Fenton, 510 F.Supp.2d 893, 904 (M.D. Fla. 2007)). In Licciardello, the court held that a manager's unauthorized use of a resident music artist's trademarked name and picture on his website, implying said artist's endorsement of his skills as a manager, individually targeted the artist in the forum state. Id. at 1282, 1287-1288.

Like Licciardello, Spiderwebart allegedly misappropriated a protected image owned by Smith. (Doc. # 34-1 at ¶¶ 15-16, 25). Although the image contains no depiction of Smith, the issue is not whether Spiderwebart used a copyright image representing or making reference to Smith but, rather, is whether its use of that image was directed at Smith. Smith has alleged that the Rose Guitar image is registered with the U.S. Copyright Office; that Spiderwebart has been on notice of its infringement since

Greg Hildebrandt, the president of Spiderwebart, was named as a defendant in this case; and that it continues to engage in the averred infringement. (Doc. # 34-1 at ¶¶ 17, 27, 31). Smith submits that Spiderwebart perpetrated the copyright infringement in reckless disregard of his rights or, alternatively, that it did so maliciously. (Id. at ¶ 76). These allegations establish that Spiderwebart's purported infringement was aimed at Smith, a resident of Florida, satisfying the effects test's second element.

The third requirement that the tort cause an injury within the forum that the defendant should have reasonably anticipated is also met. Spiderwebart's alleged use of the Rose Guitar in the sale of derivative works harmed Smith's rights by depriving him of the opportunity to profit from his protected work of art. (Doc. # 34-1 at ¶ 76).

Thus, Spiderwebart's contacts are constitutionally sufficient under the effects test to satisfy the minimum contacts requirement of the Due Process inquiry.

### 2. FAIR PLAY AND SUBSTANTIAL JUSTICE

Having found that Spiderwebart's contacts satisfy the minimum contacts requirement, it is necessary to decide whether exercising personal jurisdiction over Spiderwebart comports with traditional notions of fair play and substantial justice. While courts rely on a number of factors when conducting an analysis

18

of traditional notions of fair play and substantial justice, there are three factors of particular importance: (1) the burden on the defendant in defending the lawsuit, (2) the forum state's interest in adjudicating the dispute, and (3) the plaintiff's interest in obtaining convenient and effective relief. <u>Madara</u>, 916 F.2d at 1517.

Minimum requirements of "fair play and substantial justice" may defeat the reasonableness of asserting personal jurisdiction even if the defendant's contacts are constitutionally sufficient to satisfy minimum contacts. <u>Id.</u> Conversely, these considerations may serve to establish the reasonableness of asserting personal jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. <u>Id.</u>

Upon reviewing the circumstances of the case, considerations of fair play and substantial justice do not render personal jurisdiction over Spiderwebart unreasonable. Although Spiderwebart's employees and sole office are located in New Jersey, and the burden on Spiderwebart in having to defend a suit in Florida would be great, this burden is more than outweighed by Smith's strong interest in obtaining convenient and effective relief from the alleged copyright infringement. Smith submits that Spiderwebart's copyright infringement and its acts of unfair competition have caused him irreparable injury,

and, as of yet, the complained-of infringement has not ceased. (Doc. # 34-1 at ¶¶ 31, 77).

Assuming that Smith's allegations are true, the injury to his reputation and business is rendered more acute with each passing day that he does not receive relief from this Court. Finally, the state has a very strong interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents. See Licciardello, 544 F.3d at 1286 (citing Keeton, 465 U.S. at 776-777). Spiderwebart's infringement of Smith's copyright constitutes an intentional tort, and it caused injury to Smith, a Florida resident.

Thus, Defendants' futility argument is without merit. The Court has preliminarily determined that it has personal jurisdiction over Spiderwebart for the purpose of ruling on Plaintiff's Motion to Join. The Court thus, grants the Motion to Join. The Court will now assess Defendants' Sanctions Motion.

## IV. DEFENDANTS' SANCTIONS MOTION

Defendants allege that the Motion to Join constitutes an abuse of the litigation process and that counsel for Smith should be subject to sanctions under 28 U.S.C. §1927. 28 U.S.C. § 1927 provides that:

> Any attorney or other person admitted to conduct cases
> in any court of the United States or any Territory
> thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the
> court to satisfy personally the excess costs,

20

expenses, and attorneys' fees reasonably incurred because of such conduct.

Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1225 (11th Cir. 2003) (emphasis omitted) (quoting 28 U.S.C § 1927).

The purpose of section 1927 is to limit abuses of judicial processes and to discourage dilatory practices by attorneys. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 762 (1980). In light of its punitive nature, section 1927 should be strictly construed. Peterson v. BMI Refractories, 124 F.3d 1386, 1395 (11th Cir. 1997).

The section's plain language "makes clear that . . . [it] is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." Schwartz, 341 F.3d at 1225. Rather, three elements must be satisfied in order to properly award sanctions under section 1927. Id. First, the attorney's conduct must be unreasonable and vexatious. Id. Second, the unreasonable and vexatious conduct must multiply proceedings. Id. And, finally, the amount of the sanctions must not exceed the "'costs, expenses, and attorney's fees reasonably incurred because of such conduct.'" Hudson v. Int'l Computer Negotiations, Inc., 499 F.3d 1252, 1262 (11th Cir. 2007) (quoting Peterson, 124 F.3d at 1395).

An attorney's conduct is unreasonable and vexation under 1927 if it is so serious as to amount to "bad faith." Amlong &

Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1239 (11th Cir. 2007)(citing Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991) and quoting Schwartz, 341 F.3d at 1225). Bad faith here refers not to an attorney's subjective state of mind but, rather, to the objective reasonableness or unreasonableness of his conduct. Id. at 1239-1240. An attorney acts in bad faith, where he has knowingly or intentionally pursued a frivolous claim or needlessly obstructed the litigation of a non-frivolous claim. Id. at 1242.

Here, sanctions against Smith's counsel are not appropriate because his counsel have not acted in bad faith. The basis of Defendants' Sanctions Motion is the filing of Smith's Motion to Join. Because the Court has granted the Motion to Join, it goes without saying that such motion was not vexatious or filed in bad faith. Nor can it be argued that the Motion to Join was filed to unjustly multiply the proceedings in this case. No further discussion of this point is necessary. Accordingly, the Sanctions Motion is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

1. Plaintiff's Motion to Amend the Complaint to Join Defendant (Doc. # 34) is **GRANTED**. Plaintiff may file his amended complaint within ten days of the date of this Order.

2.  Defendants' Cross-Motion for Sanctions (Doc. # 39) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>26th</u> day of July 2010.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record